UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No.: 7:24-cv-00903-D-RJ

MEDACI WELLNESS INSTITUTE LP,

*Plaintiff,*

v.

PRAGMA FINANCE, LLC,

*Defendant.*

**DEFAULT JUDGMENT**

THIS MATTER coming on to be heard and being heard before the Honorable James C. Dever, III, United States District Court Judge for Eastern District of North Carolina, upon Plaintiff Medaci Wellness Institute LP's ("Medaci" or "Plaintiff") Motion for Default Judgment. Based upon Plaintiff's Motion for Default Judgment and documentation in support thereof, the Court finds and concludes as follows:

**FINDINGS OF FACT**

1. Medaci is a real estate and investment holding company for a forthcoming substance use disorder treatment facility (the "Facility") to be located in Brunswick County, North Carolina.

2. To fund the Facility, Medaci sought finance agreements third parties, including Pragma Finance LTD.

3. Pragma Finance LTD is an English limited company with its principal office in London, United Kingdom.

4. Pragma Finance LTD is owned and directed by Jurie Van Rensburg ("Mr. Rensburg") and Michael Griffiths ("Mr. Griffiths").

5. During its negotiations with Pragma Finance LTD, Medaci performed reasonable due diligence on Pragma Finance LTD and its directors, including but not limited

Page 1 of 6

to reference checks and additional research, and reasonably believed their company to be credible and capable of providing the financing they discussed.

6. Medaci was introduced to Defendant through Pragma Finance LTD, holding itself out as Defendant's owner and parent company and operating as a single business enterprise.

7. Upon information and belief, Pragma Finance LTD and Defendant have common ownership, officers, employees, and agents.

8. On or about February 2, 2024, Medaci and Defendant entered into a certain credit agreement (the "Credit Agreement") whereby Defendant agreed to furnish Medaci an interest-bearing loan in exchange for Medaci's repayment of the same.

9. In the Credit Agreement and to induce Medaci into the Credit Agreement, Defendant represented that it was properly capitalized and could and would be able to meet its obligations under the Credit Agreement.

10. Per the Credit Agreement, Defendant was obligated to disperse funds to Medaci in a series of tranches in a total of $60,000,000.

11. The first tranche loan disbursement was due from Defendant to Medaci no later than May 17, 2024.

12. The first tranche funding amount is approximately twelve million dollars ($12,000,000.00).

13. Despite frequent communications and repeated assurances from Defendant that it would meet its obligations to disburse the first tranche, Defendant failed to meet the May 17, 2024, funding deadline.

14. After failing to meet its deadline, Defendant continued to state that it intended to perform its obligations under the Credit Agreement and provided Medaci with updates about alleged banking issues and problems with Pragma's capital partners.

15. After failing to meet its funding deadline, Defendant informed Medaci that Defendant was acquiring funding from its capital partners, whose identities are unknown to Medaci, to be able to fulfill Defendant's obligations under the Credit Agreement.

16. Upon information and belief, without the funding from Defendant's capital partners, Defendant is unable to fulfill its obligations under the Credit Agreement.

17. Despite months of reassurances, Defendant has failed to comply with the Credit Agreement.

18. Upon information and belief, all of Pragma's representations that it was properly capitalized and could and would meets its obligations were false.

19. Upon information and belief, Pragma's directors and officers knew that their representations regarding Pragma's capitalization, its ability to perform under the Credit Agreement, and its intent perform under the Credit Agreement were false when they made them and made them to induce Medaci to rely upon them and pay Pragma an origination fee, which Medaci did pay without receiving any benefit for which it bargained.

20. After repeatedly requesting assurances such as proof of funds or banking letters and receiving none, Medaci discovered that Defendant defrauded them of their origination fee and caused them further damages by its breach of the Credit Agreement.

21. To date, Pragma has failed or otherwise refused to furnish Medaci with any monies pursuant to the Credit Agreement.

22. Because Pragma has not fulfilled its obligations under the Credit Agreement, Medaci was forced to seek alternative funding arrangements.

23. Medaci incurred three hundred eighty-five thousand seven hundred dollars ($385,700.00) ("Medaci's Damages") in losses attributable to Pragma's unfulfilled promise to furnish monies pursuant to the Credit Agreement. Medaci's Damages are itemized as follows:

24. $20,000.00 – due diligence fee paid by Medaci to Pragma;

25. $25,000.00 – Underwriting Fee;

26. $340,700.00 – personal loans from Benjamin Todd Hughes to Medaci;

## **CONCLUSIONS OF LAW**

27. The Findings of Fact are incorporated by reference as though fully set forth herein.

28. Plaintiff duly served Defendant with the Complaint and Summons in this action.

29. Defendant failed to timely respond to Plaintiff's Complaint and has otherwise failed to participate in this lawsuit.

30. The Credit Agreement is a valid and enforceable contract between Plaintiff and Defendant.

31. Defendant breached the Credit Agreement by non-performance on May 17, 2024.

32. Defendant made one or more false statements or otherwise concealed material facts concerning its ability and willingness to perform its obligations under the Credit Agreement.

33. As a proximate result of Defendant's breach of the Credit Agreement, Plaintiff has suffered damages in the amount of three hundred eighty-five thousand seven hundred dollars ($385,700.00).

34. Defendant's false statements or concealments of material facts concerning its ability and willingness to perform its obligations under the Credit Agreement were reasonably calculated to deceive Plaintiff.

35. Defendant's false statements or concealments of material facts concerning its ability and willingness to perform its obligations under the Credit Agreement were intended to deceive Plaintiff.

36. Plaintiff was, in fact, deceived by Defendant's false statements or concealments of material facts concerning its ability and willingness to perform its obligations under the Credit Agreement.

37. Plaintiff's reliance on Defendant's false statements or concealments of material facts concerning its ability and willingness to perform its obligations under the Credit Agreement was reasonable.

38. Plaintiff suffered damages proximately caused by Defendant's false statements or concealments of material facts concerning its ability and willingness to perform its obligations under the Credit Agreement.

39. Defendant's conduct was unfair and deceptive within the meaning of N.C. Gen. Stat. § 75-1.1(a).

40. Defendant's conduct was in or affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1(b).

41. Plaintiff is entitled to treble damages pursuant to N.C. Gen. Stat. § 75-16.

42. Plaintiff is entitled to judgment by default against Defendant on all claims.

THEREFORE, IT IS HEREBY ORDERED AND DECREED that Judgment by Default is entered in favor of Plaintiff and against Defendant as follows:

43. Plaintiff is hereby awarded judgment against Defendant in the principal amount of three hundred eighty-five thousand seven hundred dollars ($385,700.00)

44. That the principal amount of the Judgment ($385,700.00) be trebled, pursuant to N.C. Gen. Stat. § 75-16, to one million one hundred fifty-seven thousand one hundred dollars ($1,157,100.00).

45. Plaintiff is awarded pre-judgment interest from the date the Credit Agreement was breached, May 17, 2024, until the date the Motion for Default Judgment was granted,

March 25, 2025, at the legal rate of eight percent (8%) per annum in the amount of twenty-six thousand three hundred seventy-five dollars and fifty-five cents ($26,375.55).

46. That Plaintiff is awarded judgment (the "Judgment") against Defendant in the total sum of one million one hundred eighty-three thousand four hundred seventy-five dollars and fifty-five cents ($1,183,475.55).

47. The Judgment shall bear post-judgment interest at the legal rate of eight percent (8%) per annum from the date of its entry, until this Judgment is paid in full.

48. This Default Judgment may be supplemented by affidavit from Plaintiff or Plaintiff's counsel to include any amount expended by Plaintiff for its reasonable court costs and attorneys' fees incurred in this lawsuit in a manner not inconsistent with Fed. R. Civ. P. 54 and N.C. Gen. Stat. § 75-16.1.

SO ORDERED. This the 16 day of April, 2025.

JAMES C. DEVER III
United State District Judge